IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SONYA LANCASTER ZOLLICOFFER, | * |
| Plaintiff, | * |
| v. | * |
| MATTHEW SLEDGESKI, *et al.* | * |
| Defendants. | * |

Civil No. 8:24-cv-00679-TJS

\* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Pending before the Court is the Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 30) filed by Defendants Matthew Sledgeski ("Sledgeski") and the Fraternal Order of Police, Prince George's County, Maryland, Lodge 89, Inc. (the "FOP").[1] Having considered the parties' submissions (ECF Nos. 30, 35 & 38), I find that a hearing is unnecessary. *See* Loc. R. 105.6; *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004). For the following reasons, the Motion will be granted.

**I.    Introduction**

Plaintiff Sonya Lancaster Zollicoffer ("Zollicoffer") filed this lawsuit against Defendants on March 7, 2024. ECF No. 1. Zollicoffer's original complaint (*id.*) named several defendants that are not named in her Second Amended Complaint (ECF No. 26): John & Jane Does 1-100, Mary Levy, Kathleen Mills, Shaun Owens, Donna Poole, Prince George's County Police Department Thomas Trodden, Hector Velez, Major Art'z Watkins, Winston Wilson, Eliza Windsor, and Cory Zirk. Because Zollicoffer has abandoned her claims against the defendants not named in the

---

[1] This case is assigned to me for all proceedings by the consent of the parties, pursuant to 28 U.S.C. § 636(c). ECF Nos. 21, 23 & 24.

Second Amended Complaint, the Court will not address them here. In her Second Amended Complaint, Zollicoffer brings three claims against Defendants: civil conspiracy to interfere with contractual rights in violation of 42 U.S.C. §§ 1981 and 1983 (Count I, against Sledgeski); negligence (Count II, against the FOP); and breach of fiduciary duties (Count III, against the FOP).

### A.    Factual Background

The following facts are not in dispute. To the extent that any facts are in dispute, they are viewed in the light most favorable to Plaintiff, the non-moving party.

Zollicoffer is a Black woman. She was formerly a Lieutenant with the Prince George's County Police Department ("PGCPD"), where she served for approximately 20 years. During her career, Zollicoffer faced "numerous instances of race-based discriminatory treatment," and witnessed disparate treatment toward other officers of color within the PGCPD. ECF No. 26 at 4. Zollicoffer and other officers filed a lawsuit (the "discrimination case") against Prince George's County in 2018, alleging unlawful discrimination under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, and related claims.[2] While the discrimination case was ongoing, the Internal Affairs Division ("IAD") of the PGCPD commenced an investigation into Zollicoffer's conduct. ECF No. 26 ¶ 33.

The subject of the IAD investigation concerned Zollicoffer's request for video footage related to an excessive force complaint lodged against two PGCPD police officers. The background of this investigation sets the context for Zollicoffer's claims. In 2017, before she and other plaintiffs filed the discrimination case, Zollicoffer had been assigned to the Administrative

---

[2] The parties to the discrimination case settled, although Zollicoffer now claims that she was "unduly pressured to accept a settlement offer that she did not want to accept." ECF No. 26 ¶ 21. Zollicoffer makes other allegations of improprieties with the discrimination case but these allegations have no bearing on her claims in this case. *See* ECF No. 26 ¶¶ 22-32.

Investigative Section ("AIS") of the IAD. Zollicoffer's supervisor at the time was Lieutenant Keisha Powell. ECF No. 26 ¶ 34. In October 2017, Lt. Powell instructed Zollicoffer to investigative an "administrative matter involving an excessive force complaint made by a civilian against two PGCPD officers." *Id.* ¶ 35. The matter was assigned an internal case number of IA-2017-053. *Id.*

Sometime after 2017, Zollicoffer filed a charge of discrimination with the EEOC, complaining of discrimination within the IAD. *Id.* ¶ 36. In February 2018, Zollicoffer was transferred to the PGCPD's Patrol Bureau. *Id.* Zollicoffer was assured "that she would remain in AIS notwithstanding her discrimination complaints." *Id.* In April 2018, Zollicoffer and Lt. Powell discussed by email whether Zollicoffer would continue working on IA-2017-053. *Id.* ¶ 37. Zollicoffer informed Lt. Powell that Captain Art'z Watkins had told her to leave her IAD cases, including IA-2017-053, with Lt. Powell. *Id.* But Lt. Powell contradicted Cpt. Watkins' instruction and advised Zollicoffer that she expected her to continue working on the matter, even as she was transferred to the Patrol Division. *Id.* In June 2018, Cpt. Watkins reassigned IA-2017-053 to another officer (Sgt. Winston Wilson), but no one informed Lt. Powell or Zollicoffer that the matter had been reassigned. *Id.* ¶ 38.

In July 2018, Sgt. Wilson informed Zollicoffer that IA-2017-053 had been returned with a "buck slip" from the IAD Commander with a request that additional action be taken on the case. *Id.* ¶ 40. The "buck slip" noted the IAD Commander's concerns about the reasonableness of the force used in the case and "missing details in the Mobile Video System ("MVS"). *Id.* It is unclear why Sgt. Wilson informed Zollicoffer of these developments since the investigation was assigned to him, not Zollicoffer. But Zollicoffer interpreted the communication from Sgt. Wilson as a request that she conduct additional investigation on IA-2017-053. *Id.* ¶ 41.

So, Zollicoffer did just that. First, she reviewed the MVS footage relevant to the investigation. *Id.* ¶ 42. She discovered that seven minutes of the recording were missing, so she contacted Lt. Powell to confirm whether the copy of MVS footage maintained in the AIS database was complete. *Id.* Lt. Powell confirmed that a portion of the MVS footage appeared to be missing. *Id.*

On October 16, 2018, the IAD closed the IA-2017-053 investigation. According to Zollicoffer, "[n]either Sgt. Wilson nor Cpt. Watkins followed the normal and customary protocols" as they concerned the closure of the matter. *Id.* ¶ 43. Unlike other IAD case closures, no information was put into the AIS database that would have put Zollicoffer and Lt. Powell on notice that the investigation had been closed.[3] *Id.* Zollicoffer assumed that the investigation was still open.

Between July 2018 and April 2019, Zollicoffer requested copies of the complete MVS footage related to IA-2017-053 from Lt. Powell. *Id.* ¶ 45. The footage was never produced to her. *Id.* On April 12, 2019, Zollicoffer contacted Eliza Windsor of the PGCPD MVS Unit to request a complete copy of the footage. *Id.* ¶ 46. Windsor denied the request because Zollicoffer was on a "no-duty" status and no longer assigned to AIS. *Id.* Windsor filed a report with Sgt. Donna Poole, stating that Zollicoffer had "misrepresented facts in their discussion about her involvement in IA-2017-053." *Id.* ¶ 47. When Cpt. Watkins learned of the report, he opened an investigation against Zollicoffer. *Id.* The investigation against Zollicoffer was immediately transferred to Defendant Sledgeski, a sergeant employed by the Anne Arundel County Police Department. *Id.* ¶ 48.

---

[3] Zollicoffer alleges that Lt. Powell signed the Disciplinary Action Recommendation that closed IA-2017-053, but that Lt. Powell did not realize she was doing so because it was "mixed in with several other groups of cases that Cpt. Watkins had asked her to sign off on that day" and she did not pay attention to what she was signing. *See id.* ¶ 44.

According to Zollicoffer, Sledgeski's investigation "was not conducted in a neutral or unbiased manner." *Id.* ¶ 50. Instead, Sledgeski intended to recommend that Zollicoffer be terminated no matter what his investigation uncovered. *Id.* Zollicoffer summarily alleges that Sledgeski

> actively concealed aspects of his investigation and coordination with Cpt. Watkins by: (a) failing to document key investigative steps and witness interviews; and (b) omitting from his investigative report evidence favorable to Ms. Zollicoffer.

*Id.* ¶ 51. She also alleges that Sledgeski "held off-the-record conversations with Cpt. Watkins about targeting Ms. Zollicoffer, and he destroyed or failed to preserve investigative notes and communications." *Id.*

On April 21, 2020, after Sledgeski's investigation of Zollicoffer had concluded, the PGCPD issued a Disciplinary Action Recommendation ("DAR") to Zollicoffer. *Id.* ¶ 49. The DAR charged her with "unbecoming conduct" and "violations of laws; misrepresentation of facts." *Id.* The DAR proposed that Zollicoffer's employment be terminated. *Id.* Zollicoffer objected to the proposed discipline and requested a hearing before an Administrative Hearing Board ("AHB"). *Id.* ¶ 52.

The FOP assigned attorney Shaun Owens to represent Zollicoffer in the AHB proceedings. *Id.* ¶ 53. At the time, Mr. Owens was also representing the two officers accused of using excessive force in IA-2017-053. *Id.* Zollicoffer considered Mr. Owens' representation of her and the two officers in IA-2017-053 to be a "clear and direct conflict of interest." *Id.* ¶ 54. She requested that the FOP assign a different attorney to represent her, but the FOP declined to do so. *Id.* ¶ 55.

The hearing before the AHB began on February 25, 2021. *Id.* ¶ 56. During the hearing, the AHB only permitted Zollicoffer to call three witnesses (including herself). It denied her request to offer testimony from other witnesses, including someone who would have offered "expert witness

testimony" that "would have fully exonerated her." *Id.* The AHB issued an opinion on March 1, 2021. *Id.* ¶ 57. The opinion affirmed the charges listed in the DAR. *Id.*

On March 18, 2021, the AHB issued its disciplinary report that recommended, among other things, that Zollicoffer be demoted in rank and suspended for 80 hours without pay. *Id.* A Final Disciplinary Action was issued on April 7, 2021. *Id.* ¶ 58. It adopted the AHB's recommended discipline, effective April 9, 2021. *Id.* In light of the disciplinary action, Zollicoffer elected to retire. *Id.* ¶ 59. In addition to her early retirement, Zollicoffer alleges that she suffered other injuries attributable to Defendants' conduct, including "severe anxiety, depression, and ongoing mental anguish," and difficulties obtaining other employment in law enforcement and similar industries. *Id.* ¶¶ 61-63.

### B.    Summary of Zollicoffer's Claims

In Count I, Zollicoffer alleges that Sledgeski conspired with Cpt. Watkins, while acting under color of state law, to interfere with Zollicoffer's contractual employment rights with the PGCPD by "engaging in a racially biased, coordinated effort to manufacture a pretext for her termination," in violation of 42 U.S.C. §§ 1981 and 1983. Zollicoffer alleges that Cpt. Watkins sought to ensure her termination from PGCPD because of her race, and that he "orchestrated and directed the investigation into IA-2017-053 in such a way as to reach a predetermined conclusion that would result" in Zollicoffer's termination.[4] According to Zollicoffer, Sledgeski "act[ed] in concert with and under the direction of Cpt. Watkins," and knowingly conducted a "biased and improper investigation" of Zollicoffer.  *Id.* ¶ 71. Zollicoffer reasons that the conspiracy between

---

[4] Zollicoffer refers to the investigation of IA-2017-053, but the investigation into whether two other officers used excessive force against a civilian was not the reason that Zollicoffer was ultimately disciplined. Instead, Zollicoffer was disciplined *for her own* conduct related to the investigation of IA-2017-053.

Cpt. Watkins and Sledgeski was racially motivated because "[n]o other similarly situated officers, particularly non-African American officers, were disciplined or terminated for attempting to inquire about missing MVS video footage." *Id.* ¶ 74. Alternatively, Zollicoffer reasons that Cpt. Watkins and Sledgeski conspired against Zollicoffer "to manufacture a pretextual basis for removing [her] from her position in retaliation for her opposition to discriminatory practices within PGCPD." *Id.* ¶ 75. Because the AHB ultimately imposed discipline against Zollicoffer, she claims she was injured by Sledgeski's conduct. *Id.* ¶¶ 78-83.

In Count II, Zollicoffer alleges that the FOP was negligent in performing its duty to provide "competent and conflict-free legal representation" to her during the disciplinary proceeding before the AHB. *Id.* ¶ 85. According to Zollicoffer, the FOP owed her this duty under its collective bargaining agreement with Prince George's County. *Id.* ¶ 86. Zollicoffer alleges that the FOP breached its duty of care by assigning Mr. Owens to represent her even after Zollicoffer raised "legitimate concerns about [Mr. Owens'] conflict of interest." *Id.* ¶ 87. Zollicoffer claims that Mr. Owens' representation was "severely compromised" by the fact that he was simultaneously representing the officers who had been accused of excessive force in IA-2017-053. *Id.* ¶¶ 88-89. Because Zollicoffer was ultimately disciplined by the AHB, she claims that the FOP is responsible for her injuries. *Id.* ¶ 91. Zollicoffer brings an almost identical claim against the FOP in Count III. *Id.* ¶¶ 92-99.

## II.    Discussion

Defendants move to dismiss Zollicoffer's claims or, in the alternative, for summary judgment.

### A.    Legal Standard Under Rule 12(b)(6)

Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks omitted). And a complaint must consist of "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When considering a motion to dismiss, a court must accept as true the well-pled allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). While a court must take the facts in the light most favorable to the plaintiff, it "need not accept the legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint generally "does not need detailed factual allegations." *Id.* So long as the factual allegations are "enough to raise a right to relief above the speculative level," the complaint will be deemed sufficient. *Id.* A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

**B.    Legal Standard Under Rule 56**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict for the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Yet the "mere existence of a scintilla of evidence in support of the [opposing party's] position" cannot defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from those facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest on the mere allegations or denials of its pleading but must cite "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

9

party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and affirmatively show the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

### C.   The Statute of Limitations Bars the Claims Against the FOP.

The FOP moves to dismiss Counts II and III because they are barred by the statute of limitations. ECF No. 30-1 at 23-27. The parties agree that Zollicoffer's negligence (Count II) and breach of fiduciary duty claims (Count III) are governed by Maryland's general three-year statute of limitations for civil claims. *See id*. at 24; ECF No. 35 at 20-21; Md. Code, Cts. & Jud. Proc. § 5-101. Accordingly, the Court must determine whether Zollicoffer filed her claims more than three years after they accrued.

"While generally a cause of action accrues on the date of the alleged wrong, Maryland has also adopted the discovery rule, which provides that a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong." *Kodor Assocs. Ltd. P'ship v. Rose*, No. AW-06-1256, 2006 WL 8456972, at *2 (D. Md. July 6, 2006); *see also ARCO Nat'l Constr., LLC v. MCM Mgmt. Corp.*, No. ELH-20-3783, 2021 WL 4148456, at *14 (D. Md. Sept. 10, 2021) (explaining that, ordinarily, the question of when a claim accrues "is left to judicial determination unless the determination rests on the resolution of disputed facts regarding discovery of the wrong") (internal quotation marks omitted); *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95 (2000) (explaining that the determination of accrual "may be based solely on law, solely on fact, or on a combination of law and fact, and is reached after careful consideration of the purpose of the statute and the facts to which it is applied").

Under the discovery rule, "a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong." *ARCO*, 2021 WL 4148456, at \*14 (citing *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010) and *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 445 (2000)). The discovery rule "does not require actual knowledge on the part of the plaintiff, but may be satisfied if the plaintiff is on inquiry notice." *ARCO*, 2021 WL 4148456, at \*14 (internal quotation marks omitted). "A plaintiff is on inquiry notice when the plaintiff 'possesses facts sufficient to cause a reasonable person to investigate further, and . . . a diligent investigation would have revealed that the plaintiffs were victims of . . . the alleged tort.'" *Id.* (quoting *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 168 (2004)). "[T]he statute of limitations begins to run at the moment breach is reasonably discoverable, not at the moment when the extent of the damages is ascertainable." *Kodor Assocs.*, 2006 WL 8456972, at \*3 (citing *Lumsden v. Design Tech Builders, Inc.*, 749 A.2d 796, 804 (Md. 2000) ("A plaintiff need not be able to prove each element of the claim, nor may the claim be held in abeyance indefinitely until the plaintiff obtains professional assistance to determine the existence of the claim.")).

Applying Maryland's "discovery rule involves a two-prong test." *Simon v. Gladstone*, No. 23-1431, 2025 WL 721317, at \*5 (4th Cir. Mar. 6, 2025) (quoting *State Auto. Mut. Ins. v. Lennox*, 422 F. Supp. 3d 948, 964 (D. Md. 2019)). "[T]he first prong, 'sufficiency of the actual knowledge to put the claimant on inquiry notice,' concerns 'the nature and extent of actual knowledge necessary to cause an ordinarily diligent plaintiff to make an inquiry or investigation that an injury has been sustained.'" *Id.* (quoting *Georgia-Pacific Corp. v. Benjamin*, 904 A.2d 511, 528-29 (Md. 2006)). "Constructive knowledge is not enough. Rather, the plaintiff must have express knowledge from "sources 'cognizant of the fact[s]'" or implied notice, meaning "knowledge sufficient to

prompt a reasonable person to inquire further." *Id.* (quoting *Benjamin*, 904 A.2d at 529). "The second prong, 'the sufficiency of the knowledge that would have resulted from a reasonable investigation,' requires that after a reasonable investigation of facts, a reasonably diligent inquiry would have disclosed whether there is a causal connection between the injury and the wrongdoing." *Id.* (quoting *Lennox*, 422 F. Supp. at 964).

In general, the statute of limitations is an affirmative defense that must be pleaded and proved by a defendant, and it is ordinarily not reached on a motion to dismiss. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). If, however, all facts necessary to the affirmative defense appear on the face of the complaint, it may be resolved on a motion to dismiss. *See id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). This case is the rare one where a statute of limitations defense may be resolved on a motion to dismiss.

Zollicoffer claims that the FOP appointed attorney Shaun Owens to represent her in connection with the AHB disciplinary proceeding. ECF No. 26 ¶ 53. According to Zollicoffer, the FOP assigned Mr. Owens to represent her sometime before February 25, 2021, when the AHB hearing began. *Id.* ¶¶ 53-56. Before the AHB hearing commenced, and perhaps while it was ongoing, Zollicoffer raised repeated objections to the FOP regarding Mr. Owens' selection.[5] *Id.* ¶ 55. She claimed that Mr. Owens had a "direct conflict" that precluded him from representing her. *Id.* The AHB proceeding concluded on March 1, 2021, when the AHB issued its opinion affirming the DAR's charges against Zollicoffer. *Id.* ¶ 57. Zollicoffer filed her initial complaint more than three years later, on March 7, 2024. ECF No. 1.

---

[5] Zollicoffer concedes that (1) the FOP selected Mr. Owens to represent her and (2) she objected to the FOP's selection of Mr. Owens "prior to the AHB proceedings on February 25, 2021." ECF No. 35 at 20.

The FOP argues that the statute of limitations for Zollicoffer's claims in Counts II and III accrued no later than March 1, 2021, when the AHB proceeding concluded.[6] ECF No. 30-1 at 24-25. This is because Zollicoffer knew the facts giving rise to her claims against the FOP before March 1, 2021: (1) that the FOP had a duty to assign a competent and conflict-free attorney to represent her in disciplinary proceedings; (2) that the FOP selected Mr. Owens, who Zollicoffer believed had a "direct conflict" that precluded him from representing her; (3) that the FOP knew of Mr. Owens' purported conflict because Zollicoffer voiced her objections to the FOP; (4) that the FOP rejected Zollicoffer's concerns and declined to replace Mr. Owens with another attorney; and (5) that Zollicoffer was injured, inasmuch as she was forced to proceed through the AHB proceeding without the assistance of conflict-free counsel. Because Zollicoffer did not file her initial complaint until March 7, 2024, more than three years after her claims against the FOP accrued, the FOP argues that her claims are barred by the statute of limitations.

Zollicoffer claims that the question of when she should have known of her injury is "particularly complex" because the alleged harm of representation by an attorney with an ethical conflict "may not have been immediately apparent to a layperson." ECF No. 35 at 21. But in her Second Amended Complaint, Zollicoffer alleges that the conflicted representation *was* apparent to her:

> On multiple occasions [before the AHB proceeding began], Ms. Zollicoffer informed Defendant FOP that she objected to the representation because of the direct conflict. Despite Mr. Zollicoffer's repeated objections, Defendant FOP refused to assign a different attorney to represent her.

ECF No. 26 ¶ 55.

---

[6] The Court does not address whether Mr. Owens had an ethical conflict under Md. Rule 19-301.7 because the FOP's argument assumes that such a conflict existed.

Of course, by March 1, 2021, Zollicoffer did not know how exactly the AHB proceeding would conclude. This is because the AHB did not issue its disciplinary recommendation until March 18, 2021, and the Final Disciplinary Action adopting the AHB's recommendation was not entered until April 7, 2021. But under Maryland's discovery rule, "the statute of limitations begins to run at the moment breach is reasonably discoverable, not at the moment when the extent of the damages is ascertainable." *Kodor Assocs.*, 2006 WL 8456972, at *3.

Zollicoffer contends that "several factors" suggest that her claims did not accrue until later. First, she argues that she did not understand the "full extent and impact" of Mr. Owens' purported conflict of interest until after the AHB proceedings. ECF No. 35 at 20. This is because she did not realize how "severely compromised" Mr. Owens was in his ability to provide conflict-free representation until she saw first-hand that he "could not zealously advocate positions that could have fully exonerated [her] without adversely affecting his other clients." ECF No. 35 at 20 (quoting ECF No. 26 ¶ 89). But this argument fails on its own terms. If Zollicoffer needed to see how Mr. Owens performed in front of the AHB to realize how "severely compromised" he was because of a conflict, she was able to make these observations before March 1, 2021, when the AHB proceeding concluded and the AHB issued its opinion affirming the charges against her. This "factor" is not a basis to find that her claims against the FOP accrued later than March 1, 2021.

Zollicoffer also argues that the "prejudicial effect" of Mr. Owens' conflicted representation only "manifested" when the AHB refused Zollicoffer's request to offer testimony from certain witnesses, including an expert. ECF No. 35 at 20 (citing ECF No. 26 ¶ 56). Again, Zollicoffer's complaint on this point concerns what happened during the AHB proceeding, which concluded before March 1, 2021. This is not a reason to find that her claims against the FOP accrued after March 1, 2021.

Finally, Zollicoffer argues that "she did not discover certain facts about the scope and nature of the conflict until March 18, 2021, when the AHB issued its detailed report." ECF No. 35 at 21. But the only new facts that her Second Amended Complaint alleges she learned from the AHB's report concern certain "covert communications" between Sledgeski and Cpt. Watkins. Zollicoffer does not allege that these communications somehow formed the source of her understanding that Mr. Owens had a conflict that should have precluded him from representing her. And in her Second Amended Complaint, Zollicoffer makes no allegations about Mr. Owens' actual performance in the course of his representation. Instead, she complains only of decisions that the AHB made in excluding witnesses that she believes would have favored her defense. Neither Mr. Owens nor the FOP can be responsible for the decisions of the AHB.

The Court now turns to Maryland's two-prong discovery rule. Zollicoffer herself alleges that she had actual knowledge of Mr. Owens' purported conflict. And recognizing that representation by Mr. Owens could injure her, she brought her objections to the FOP. After the FOP declined to assign substitute counsel, Zollicoffer proceeded to the AHB hearing with Mr. Owens as her attorney. She knew she lost the AHB hearing no later than March 1, 2021. Under the first prong, Zollicoffer had actual knowledge of Mr. Owens' conflict and the FOP's refusal to replace him with conflict-free counsel. Because this was enough to put her on inquiry notice regarding a potential claim against the FOP, the first prong is satisfied. The second prong is also satisfied because Zollicoffer knew that the FOP was responsible for assigning counsel for the AHB proceeding. She understood that any damages she suffered as a result of Mr. Owens' conflicted representation might be attributable to the FOP's appointment of Mr. Owens in the first place. Zollicoffer's claims against the FOP accrued no later than March 1, 2021. Because her initial

complaint was filed more than three years after March 1, 2021, her claims against the FOP are barred by the statute of limitations.[7] Counts II and III are **DISMISSED WITH PREJUDICE**.

### D.    Sledgeski is Entitled to Summary Judgment

In Count I of the Second Amended Complaint, Zollicoffer alleges that Sledgeski conspired to interfere with her contractual rights in violation of 42 U.S.C. §§ 1981 and 1983. ECF No. ¶¶ 64-83. The gravamen of this claim is that Sledgeski conspired with Cpt. Watkins to interfere with Zollicoffer's contractual employment rights, and he did so because of Zollicoffer's race. *Id.* ¶ 69. Zollicoffer alleges that Sledgeski carried out the conspiracy by conducting a "biased and improper investigation" aimed at ensuring Zollicoffer would be terminated regardless of what facts were uncovered.[8] *Id.* ¶ 71. She alleges that she was terminated as a result of Sledgeski's conduct. *Id.* ¶ 83.

Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). The term "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Section 1981 prohibits nongovernmental actors

---

[7] If Zollicoffer's claims against the FOP were not barred by the statute of limitations, the Court would have dismissed them as implausible and for failing to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Zollicoffer's allegations against the FOP are that it assigned a conflicted attorney to represent her and refused to replace the attorney after she objected. Other than alleging that the attorney had a conflict, Zollicoffer does not allege that the attorney's performance was deficient or at all related to the decisions made by the AHB in excluding the witnesses she offered, or by the PGCPD in adopting the AHB's recommended disciplinary action. The Second Amended Complaint lacks a plausible causal link between the FOP's assignment of Mr. Owens and the injuries that Zollicoffer claims.

[8] Because Sledgeski is entitled to summary judgment on Count I, the Court declines to address Sledgeski's other arguments, including that the claim is barred by the statute of limitations. ECF No. 30-1 at 16-18.

and those acting under color of state law from impairing contractual relationships protected by the statute because of discrimination. 42 U.S.C. § 1981(c); *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999) ("A § 1981 action, then, must be founded on purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b).").

"To establish a conspiracy claim under § 1983, a plaintiff 'must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right.'" *Massey v. Ojaniit*, 759 F.3d 343, 357-58 (4th Cir. 2014) (alterations in original) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)); *see also Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 658 (4th Cir. 2017). This burden is "weighty." *Hinkle*, 81 F.3d at 421. "While they need not produce direct evidence of a meeting of the minds, [plaintiffs] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Id.* The evidence "must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.*

In order to succeed on Count I under both §§ 1981 and 1983, Zollicoffer must prove that Sledgeski's actions were motivated by Zollicoffer's race. Zollicoffer alleges that "the conspiracy between Sledgeski and Cpt. Watkins was motived by Ms. Zollicoffer's race as an African American." ECF No. 26 ¶ 74. She also alleges that "[n]o other similarly situated officers, particularly non-African American officers, were disciplined or terminated for attempting to inquire about missing MVS video footage." *Id.* And she alleges that Sledgeski's investigation was part of a "broader pattern of 'systemic discrimination in PGCPD's disciplinary processes against officers of color.'" ECF No. 35 at 17 (citing ECF No. 26 ¶¶ 3, 13, 16 & 17).

As explained above, Sledgeski's Motion is captioned as a motion to dismiss or, in the alternative, for summary judgment. A motion to dismiss styled in the alternative as a motion for summary judgment implicates the Court's discretion under Rule 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). *Howard v. W. Corr. Inst.*, No. BAH-24-2438, 2025 WL 1265473, at *2 (D. Md. May 1, 2025) (citing *Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011)). When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Howard*, 2025 WL 1265473, at *2 (citing *Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 657 (D. Md. 2021) ("Notably, 'the Federal Rules do not prescribe that any particular notice be given before a Rule 12 motion is converted to a Rule 56 motion.'")).

Because Sledgeski styled the motion as a motion to dismiss or, in the alternative, for summary judgment, Zollicoffer was on notice that the Court could treat the motion as one for summary judgment and rule on that basis.[9] Accordingly, the Court will review Zollicoffer's claim

---

[9] Notably, Zollicoffer did not invoke Rule 56(d) to demonstrate that she cannot present facts essential to justify her opposition to the Motion, nor did she file the affidavit or declaration that Rule 56(d) requires. Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.").

against Sledgeski under the Rule 56(a) standard and will consider the exhibits filed in support of Sledgeski's Motion.

In support of his Motion, Sledgeski relies on his own affidavit. ECF No. 30-2. In the affidavit, Sledgeski states that during his time as a Sergeant for the Anne Arundel County Police Department's Internal Affairs, he was asked to investigate Zollicoffer. *Id.* at 1. He conducted his investigation "by interviewing the complainant, interviewing witnesses, gathering documents, and reviewing documents." *Id.* He attempted to interview Zollicoffer, but she refused, and he concluded his investigation without getting her side of the story. *Id.* at 1-2. During his investigation, Sledgeski never met Zollicoffer and "had no idea what she looked like." *Id.* at 1. He was "completely unaware" of Zollicoffer's race. *Id.* At the conclusion of his investigation, Sledgeski determined that the evidence was "sufficient to sustain the charges that Ms. Zollicoffer misrepresented her position and attempted to obtain a copy of video footage . . . without following appropriate, established procedures." *Id.* at 2. He forwarded two charges to the PGCPD (unbecoming conduct and misrepresentation of facts), but did not make any recommendation about discipline. After his investigation concluded on March 20, 2020, Sledgeski "did not conduct any further actions toward [the] investigation." *Id.* at 2. Sledgeski states that his investigation into Zollicoffer's conduct was not influenced by her race in any way. *Id.* at 1. He first met Zollicoffer at her AHB hearing on February 25, 2021, which he attended. *Id.* at 1. Sledgeski did not testify at the AHB hearing and his investigative report was not entered into evidence. *Id.* at 2.

A copy of Sledgeski's investigative report is filed at ECF No. 30-3 at 23-29. The report details the steps that Sledgeski took in his investigation, including interviewing witnesses Eliza Windsor, Sgt. Donna Poole, and Farana Abdul. *Id.* at 24-26. Transcripts of these interviews are filed at ECF No. 30-3 at 1-22. The report concludes with Sledgeski's investigative findings. *Id.* at

27. In sum, Sledgeski credited the testimony of the witnesses he interviewed. He determined that Zollicoffer requested a copy of video footage while on "no duty" status. *Id.* Employees on "no duty" status are not "privy to . . . video copies." *Id.* When Zollicoffer was instructed to file a formal request for the footage, Zollicoffer asked if there were other ways to obtain the footage. *Id.* Her request was denied and she was instructed that she could only obtain a copy of the footage with a formal request. *Id.* Zollicoffer then asked Sgt. Farana Abdul to obtain a copy of the footage for her. *Id.* Sgt. Abdul tried to obtain the footage but was told that the footage could be released only if Zollicoffer submitted a formal request. *Id.* Zollicoffer's conduct was documented and forwarded to Cpt. Watkins. *Id.*

At the end of the report, Sledgeski states that "this case can be resolved with a finding of **SUSTAINED**" as to Zollicoffer's violation of the Prince George's County Police Department General Order Manual (Unbecoming Conduct) and the Prince George's County Code (Misrepresentation of Facts). *Id.* at 28 (emphasis in original). Sledgeski explained that Zollicoffer engaged in unbecoming conduct by trying to obtain a copy of video footage without following established procedures, and by trying to obtain the footage in a manner that would violate normal protocol. *Id.* And he found that Zollicoffer misrepresented facts insomuch as she provided false information when she told Eliza Windsor that an Internal Affairs report had been returned and she was required to obtain a copy of the video to complete the report, which was untrue. *Id.* at 29.

Through its submission, Defendants have demonstrated that Sledgeski's investigation adhered strictly to professional standards and proper investigative protocols at every stage. The evidence demonstrates that his inquiry was conducted methodically and impartially, following standard investigative practices including witness interviews and thorough document review. Most significantly, Sledgeski had no knowledge of Zollicoffer's race during his entire investigation.

This is confirmed in Sledgeski's sworn affidavit where he explicitly states he "had no idea what [Zollicoffer] looked like" and was "completely unaware" of her racial identity until meeting her at the AHB hearing (nearly a year after concluding his investigation). ECF No. 30-2 at 1. Defendants have presented unrebutted evidence that Zollicoffer's findings were based solely on the evidence he obtained from multiple witnesses whose accounts consistently confirmed that Zollicoffer attempted to circumvent established departmental procedures for obtaining video footage while on "no duty" status.

Zollicoffer's argument in response to the Motion is just that: argument. Because her Second Amended Complaint is unverified, its factual assertions may not be considered in opposition to the Motion. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (explaining that, "[a]s a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the [unverified] complaint, but must, by factual affidavit or the like, respond to the motion"); Fed. R. Civ. P. 56(c)(1)(A). In addition, to the extent that Zollicoffer has failed to address Sledgeski's assertions of fact as required by Rule 56(c), the Court will consider those facts to be undisputed. Fed. R. Civ. P. 56(e)(2).

Zollicoffer presents no evidence that Sledgeski's investigation was tainted by racial animus. In fact, she presents no evidence that the investigation was improper in *any* respect. Her allegation that "[n]o other similarly situated officers, particularly non-African American officers, were disciplined or terminated for attempting to inquire about missing MVS video footage," ECF No. ECF 26 ¶ 74, is not supported by any evidence. The same is true for her allegation that Sledgeski conspired with Cpt. Watkins against Zollicoffer "to manufacture a pretextual basis for removing [her] from her position in retaliation for her opposition to discriminatory practices within

21

PGCPD." *Id.* ¶ 75. Zollicoffer's allegations and arguments that Sledgeski violated §§ 1981 and 1983 are entirely unsupported by evidence.

Because Zollicoffer has failed to properly oppose Sledgeski's Motion, and because Sledgeski has demonstrated that his actions were not motivated by Zollicoffer's race or any other unlawful consideration, Sledgeski is entitled to judgment as a matter of law on Count I. Sledgeski's Motion is **GRANTED** as to Count I.

### III.    Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 30) is **GRANTED**. Plaintiff's claims against the FOP in Counts II and III are **DISMISSED WITH PREJUDICE** because they are barred by the statute of limitations. As to Count I, summary judgment will be entered in favor of Sledgeski. A separate order will follow.

Date: May 29, 2025                                        _____/s/_____
                                                          Timothy J. Sullivan
                                                          Chief United States Magistrate Judge